DARRAL NEWMAN *v.* STATE OF INDIANA.

[No. 471S121. Filed February 22, 1972.
Rehearing denied April 13, 1972.]

*Palmer K. Ward*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *William F. Thompson*, Assistant Attorney General, for appellee.

HUNTER, J.—This is an appeal by Darral Newman from a judgment in the Marion Criminal Court, Division Two, convicting him of Voluntary Manslaughter. Appellant was charged with First Degree Murder, but was found guilty of the lesser included offense. Trial was to a jury, and, upon conviction, he was sentenced to the Indiana Reformatory for a term of not less than two (2) years nor more than twenty-one (21) years.

On appeal, appellant contends that the evidence is insufficient to sustain the verdict of the jury. This contention is based on the fact that there was no testimony at trial which postitively identified the appellant as the assailant. We do not agree.

In determining whether the evidence is sufficient to sustain the conviction, this Court will not weigh the evidence nor determine the credibility of witnesses. Only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom will be considered on

appeal. If there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Valentine* v. *State* (1971), 257 Ind. 197, 273 N. E. 2d 543; *Thomas* v. *State* (1971), 256 Ind. 309, 268 N. E. 609; *Tibbs* v. *State* (1970), 255 Ind. 309, 263 N. E. 2d 728.

The evidence most favorable to the State, as revealed by the record, is as follows: On the evening of October 3, 1970, the victim, Kenny Simms, and his nephew, Michael Cable, drove to a liquor store located on Roosevelt Street in Indianapolis, Indiana. After purchasing some beer and whiskey, Simms and Cable returned to the automobile and prepared to leave. While backing the automobile from the parking space, Simms apparently narrowly missed striking the appellant who was crossing the street with some friends. Simms and Cable were laughing when appellant approached the driver of the automobile, Simms, and began talking to him through the side window. Simms again started to back his automobile from the parking space when appellant pulled out a gun and shot him in the neck. Simms died two days later from the injuries sustained in the shooting incident.

The State produced three witnesses at trial who testified that they were present at the scene when the shooting occurred. The first witness, Michael Cable, nephew of the deceased, testified that he was sitting in the front seat of the automobile, opposite the victim, Simms. After the shot was fired, Simms' foot slipped off the clutch, and Cable was thrown forward into the windshield, thus preventing him from ever seeing the gunman's face. The only identification Cable could offer at trial was that the gunman was a thin Negro male.

The State's next witness, William Bullock, testified that he was walking past the liquor store when he heard the gun discharge. He saw a Negro male wearing a white shirt and blue pants running from the automobile. On cross examination,

Bullock further testified that he was acquainted with the appellant; that he and the appellant used to play ball together; and that he did not see the appellant at the scene of the crime.

However, the State's final witness, Darryl Russell, testified that he saw the appellant at the scene. Russell's version of the incident is that the Simms' automobile almost struck the appellant as he was walking across the street. He further testified that while the occupants of the car were laughing, appellant approached the car and began talking to them. Upon being asked what the appellant did next, Russell became evasive. Russell testified that the gunman looked like the appellant, but that he could not be positive it *was him*. Russell expressed no doubt, however, about the fact that he saw the appellant at the scene with a gun. The prosecutor's request that Russell be declared a hostile witness was granted. For the purpose of showing a prior inconsistent statement, Russell was asked whether he had earlier positively identified the appellant to the police as the man who shot Kenny Simms. Russell's only explanation for this statement was that at the time he made the statement he believed that the appellant had already surrendered to the police. It was also brought out that Russell and the appellant were friends, and Russell admitted that he did not want to see the appellant go to jail.

It is true that only one of the three witnesses identified appellant as being at the scene of the crime. However, the first witness, Cable, did not offer a negative identification. Cable simply testified that he never had the opportunity to view the gunman's face. Witness Bullock testified that he did not see the appellant at the scene, but this testimony was contradicted by Russell who testified that he saw the entire incident occur. It is the province of the jury to determine the credibility of witnesses and determine whether they will believe all or none of a witness' testimony. See, *Swift* v. *State* (1961), 242 Ind. 87, 176 N. E. 2d 117. Apparently, the jury chose to disbelieve witness Bul-

lock's testimony, and this decision will not be disturbed by this Court on appeal.

Russell testified that he saw appellant approach Simms' automobile to talk with him after almost being struck when he crossed the street. Russell further testified that he saw appellant at the scene with a gun in his possession. Cable testified that the man who approached the automobile to converse was also the man who pulled the gun and shot Simms. Although Russell testified that he could not be sure that appellant was the gunman, he did state that he thought it "looked like him." This Court is of the opinion that the evidence is certainly sufficient for the jury to conclude, beyond a reasonable doubt, that it was the appellant who shot Kenny Simms.

For all the foregoing reasons, we hold that the verdict finding the appellant guilty of Voluntary Manslaughter was correct, and, therefore, the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 278 N. E. 2d 573.